**JOHNSTOWN & JENNINGS CO. v. NEVILLE CO. et al.**

No. 3226.

District Court, W. D. Pennsylvania.

Jan. 31, 1939.

Bruce G. Mackey, of Pittsburgh, Pa., and Fay, Oberlin & Fay, of Cleveland, Ohio, for plaintiff.

Brown, Critchlow & Flick, of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

This is a patent-infringement suit involving Calhoun Patent No. 1,735,261, issued to Oil Conservation Engineering Company, Assignee, for improvements in flame arresters used for the protection of oil-storage tanks from destruction by fire. Claims 1, 3, and 4 are in suit. Claims 1 and 4 may be taken as typifying the scope of the alleged invention.

Claim 1 is as follows: "1. A flame arrester formed of aluminum and providing a bank of small aluminum walled passages adapted to be inserted in a breather or other pipe for the passage of inflammable gases."

Claim 4 is as follows: "4. A flame arrester for tank vents consisting of a vent pipe, a casing mounted in said vent pipe, and a member formed of aluminum and providing a multiplicity of small aluminum walled passages adapted to be inserted in said casing, the size of the individual walled passage, the length of the walled passages and the combined cross sectional area of the entire bank of walled passages being proportioned to the size of the vent pipe to prevent flame propagation."

The only issue in the case involves the validity of the patent in suit. That issue

centers around the use of aluminum in forming the flame-arresting tubes. There is no question but that the prior art discloses the use of brass and bronze in the construction of flame-arresters of similar design to that of the flame-arresters shown in the patent.

The defendants contend that there is no invention involved in the utilization of aluminum as the material for a tube-bank in a flame-arrester; that the claims of the patent are broader than the alleged invention disclosed; and that the patentee is not the original inventor of the use of aluminum in formation of the tube-bank of flame-arresters.

■ On the question of the substitution of materials, the law is well stated by Circuit Judge Woolley of this Circuit, in Low v. McMaster, 3 Cir., 266 F. 518, 519, as follows: "On this subject it is the law, that merely to substitute superior for inferior materials, in making one or more or all of the parts of a machine or manufacture, is not invention, although the substitution may be of materials that are both new and useful in high degree. It is also the law, as exceptions to this general rule, that if the substitution involved a new mode of construction; or if it developed new properties and uses of the article made; or where it produces a new mode of operation, or results in a new function; or when it is the first practical success in the art in which the substitution is made; or where the practice shows its superiority to consist not only in greater cheapness and greater utility, but also in more efficient action, it may amount to invention."

■ Applying the test fixed by Low v. McMaster, supra, to the instant case, we find in the use of aluminum no new mode of construction, no new properties or use of the flame-arresters, no new mode of operation, no new function of the flame-arresters, nor greater cheapness or utility, and no more efficient action. The tube-bank made of aluminum operates no more efficiently than either bronze or brass. The only thing that can be said for aluminum as against other materials is that a shorter tube-bank will arrest the flame. This change in size of the tube-bank does not amount to invention, for the Supreme Court has said that where the alleged invention rests in the mere carrying forward of the original idea, and where the change is only in form or of proportions, or of degree, there is no such invention as will sustain a patent. See Railroad Supply Co. v. Elyria Iron Co., 244 U.S. 285, 293, 37 S.Ct. 502, 61 L.Ed. 1136.

■ As to the contention that the claims are invalid, because the disclosure is not sufficiently definite to satisfy the requirements of R.S. § 4888, 35 U.S.C.A. § 33, which require an applicant to file a written description of his discovery or invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains * * * to make, construct, compound, and use the same; * * * and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." Taking claim 1, the patent in suit covers a flame-arrester formed of aluminum, and provides a bank of small aluminum passage adapted to be inserted in a breather or other pipe for the passage of inflammable gas. Now, the invention is said to rest in the substitution of aluminum for brass, and the provision for a shorter bank of tubes; but such is not the claim; it would clearly cover a bank of tubes of any length. The claim is therefore much broader than the invention.

The same situation likewise prevails as to claims 3 and 4, which provide for "a multiplicity of small aluminum walled passages adapted to be inserted in said casing," but specifies no exact size for these passages, but merely states that they are to be such as to "prevent flame propagation." Thus we have a situation where the size of the openings is defined in purely functional terms; namely, they are to be of such size as "to prevent flame propagation." These claims are therefore invalid under the ruling of the Supreme Court in General Electric Co. v. Wabash Appliances Corporation, 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402, holding that product-claims may not be broadened by describing the product in terms of function.

Finally, we cannot find that Calhoun was the first to use aluminum in the making of flame-arresters. We find that Stephan H. Brooks, on April 15, 1922, filed a patent application for flame-arresters, whose structure was the same as the present arresters. While that application does not disclose that any specific metal is to be used, it does disclose that a heat-conducting metal is to be used. Aluminum is such a metal. In fact, arresters made both of brass and aluminum were submitted by

Brooks, when he was an employee of plaintiff's predecessor, to the Underwriters' Laboratories for test. Calhoun, the applicant for the patent in suit, also was an employee of plaintiff's predecessor at the time Brooks was in the employ of said company, and at the time that both brass and aluminum tubes were submitted for test to the Underwriters' Laboratories. Calhoun was not produced as a witness for plaintiff, nor was his absence explained. Certainly, Brooks's abandoned patent-application, Serial No. 553,224, filed April 15, 1922, assigned to the Oil Conservation Engineering Company, shows that the plates composing the tube-bank are to be of a highly heat-conducting metal in which class aluminum falls. The inference is strong that Calhoun must have known of the tests and the work of Brooks, or he would have been called as a witness. Our conclusion is that Calhoun was not the first to use aluminum in a tube-bank in flame-arresters.

On the whole case, we must hold the patent in suit to be invalid.

A decree may be submitted dismissing the bill of complaint.